IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FILE NO. 2:26-cv-03957-BHH

| | | |
|---|---|---|
| THE BURLINGTON, INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>INFINICEE, LLC D/B/A LE CRÈME, SOLOMAN DEREK MIDDLETON, CHARLIN ALAMEDA, and SPENCER WILLIAMS,<br><br>Defendants. | ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |

**COMES NOW** the Plaintiff, The Burlington Insurance Company ("TBIC"), by and through counsel, and pursuant to Rule 57 of the Federal Rules of Civil Procedure and the provisions of 28 U.S.C. § 2201, and alleges and says:

## <u>Preliminary Statement</u>

1. Pursuant to 28 U.S.C. § 2201, TBIC seeks a declaratory judgment and adjudication concerning the rights, obligations and liabilities of the parties under a commercial policy of insurance with respect to claims asserted in the civil lawsuit captioned "*Spencer Williams v. Infinicee, LLC d/b/a Le Crème* et al.," Case No. 2025-CP-18-00123, pending in the Court of Common Pleas for Dorchester County, South Carolina (the "Underlying Lawsuit").

## <u>Jurisdiction</u>

2. Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00.

**Venue**

3. This action properly lies in the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(1) and (2) since the defendants all reside in the same state and in this judicial district, and since a substantial part of the events giving rise to this declaratory judgment occurred in this judicial district.

**Parties**

4. TBIC is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of Illinois, with its principal place of business in Hartford, Connecticut. TBIC is authorized to transact business and write insurance policies in the State of South Carolina.

5. Upon information and belief, Defendant Infinicee, LLC d/b/a Le Crème ("Infinicee") was at all relevant time alleged herein a limited liability corporation organized and existing under the laws of the State of South Carolina, whose registered agent for service of process is Charlin Alameda at 1217 Bradley Daniel Boulevard, Summerville, South Carolina 29486, and at all times relevant herein was doing business and owned property in the State of South Carolina, including in Dorchester County.

6. Upon information and belief, Defendant Soloman Derek Middleton ("Middleton") is a citizen and resident of Berkeley County, South Carolina.

7. Upon information and belief, Defendant Charlin Alameda ("Alameda") is a citizen and resident of Dorchester County, South Carolina.

8. Upon information and belief, Defendant Spencer Williams ("Williams") is a citizen and resident of Berkeley County, South Carolina.

## Facts

**A. The Underlying Lawsuit**

9. On January 24, 2025, Miles filed the Underlying Lawsuit, asserting claims arising out of an incident that occurred on or about July 16, 2022. A true and accurate copy of the Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit 1** and incorporated by reference.

10. It is alleged in the Complaint in the Underlying Lawsuit that Infinicee owned, operated, and/or managed a nightclub located at 8440 Dorchester Road, Suite 1, North Charleston, South Carolina 29420-7318 (the "Club"), and that Middleton and Alameda were owners and/or operators of Infinicee.

11. It is further alleged in the Complaint in the Underlying Lawsuit that "[o]n or about July 16, 2022, in the early morning hours, [Williams] was a patron at Defendants' Club when a fight broke out," and "[i]n response to the fight, Defendants' employees, agents, or servants escorted patrons and persons involved in the fight out onto the front patio where the fight continued. During the fight gunfire and other gunshots were fired towards Plaintiff and other patrons of Defendants' Club."

12. It is specifically alleged in the Complaint in the Underlying Lawsuit that "[d]uring that gunfire exchange, [Williams] was shot in his stomach, chest, and side, leaving [Williams] injured and scarred."

13. In the Underlying Lawsuit, a single cause of action was asserted against Infinicee, Middleton, and Alameda, which was a cause of action for Negligence/Gross Negligence.

14. In support of the cause of action against Infinicee, Middleton, and Alameda in the Complaint in the Underlying Lawsuit, it is alleged that they were negligent, careless, reckless, grossly negligent, willful, and wanton in the following ways:

a. In failing to properly secure its premises to avoid harm to patrons, including Plaintiff;

b. In failing to adequately monitor and supervise the atmosphere of its premises to avoid harm to patrons, including Plaintiff;

c. In failing to take all appropriate and necessary steps to keep dangerous persons and known criminals from coming onto the premises;

d. In failing to provide adequate security and/or security measures;

e. In failing to intervene in a violent situation when Plaintiff was injured;

f. In failing to seek assistance from other security personnel in handling a violent situation;

g. In failing to properly address a fight inside of the club to deescalate the conflict to prevent further, more violent conflict;

h. In failing to adequately hire, train, monitor and supervise its employees, agents, and/or servants to avoid harm to patrons, including Plaintiff;

i. In permitting the unregulated consumption of alcohol, thus creating a hazardous condition that Defendants knew or should have known that such created an unreasonable risk of injury to Plaintiff and other business invitees;

j. In failing to establish policies and procedures for the prevention of fights and other violence at the club; and

k. In all other and further particulars that the evidence at trial may show.

15. Actual, exemplary, and compensatory damages as well as punitive damages were sought in the Underlying Lawsuit.

**C. The TBIC Policy**

16. TBIC had issued to Infincee LLC dba LeCreme Restaurant, as the named insured, a commercial policy of insurance, policy no. 864B009922, effective from February 15, 2022, to September 9, 2022 (the "TBIC Policy").

17. The TBIC Policy includes a Commercial General Liability ("CGL") Coverage Part with a liability limit of $1 million Each Occurrence and a $2 million General Aggregate Limit, and a Liquor Liability Coverage Part with a liability limit of $1 million Each Common Cause and a $2 million Aggregate Limit.

18. A true and accurate copy of the TBIC Policy is attached hereto as **Exhibit 2** and is incorporated by reference.

19. TBIC denied coverage under the TBIC Policy for the claims asserted in the Underlying Lawsuit because the "Assault & Battery" exclusion in the policy bars coverage for such claims which were caused by or arose, directly or indirectly, in whole or in part out of any "assault" or "battery" committed or attempted by any person or any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault," "battery," or verbal or physical confrontation or altercation.

**D. The Order of Judgment against Infinicee**

20. Infinicee failed to timely respond to the Complaint in the Underlying Lawsuit, and an Order of Default was entered against Infinicee on September 19, 2025.

21. On August 25, 2026, an Order of Judgment was entered against Infinicee in the Underlying Lawsuit, awarding damages in the amount of $ 921,445.65. A true and accurate copy of the Order of Judgment is attached hereto as **Exhibit 3** and is incorporated by reference.

22. In the Order of Judgment, the court found that "[o]n July 16, 2022, in the early morning hours, [Williams] was a patron at Defendant Infinicee's nightclub when a fight broke out among patrons," and "[i]n response to the fight, Defendant Infinicee's employees, agents, or servants escorted the patrons and persons involved in the fight out onto the front patio, where the fight continued."

23. In the Order of Judgment, the court found that "[d]uring the ensuing altercation, gunfire was exchanged, and shots were fired toward Plaintiff and other patrons of Defendant Infinicee's nightclub," and "[a]s a result of the gunfire, [Williams] was shot in his stomach, chest, and side, sustaining injuries and permanent scarring."

24. The Order of Judgment awarded actual damages in the total amount of $821,445.65, which included $221,445.65 in medical expenses, plus $200,000 for past and future pain and suffering, $200,000.00 for past and future loss of enjoyment of life, and $200,000.00 for past and future emotional distress, plus $100,000 in punitive damages, for a total judgment of $921,445.65.

25. TBIC has filed the present action in order to seek a declaration relative to the rights, duties, and obligations of the parties under the TBIC Policy with regard to the claims and damages asserted in the Underlying Lawsuit, including the Order of Judgment entered against Infinicee.

## FIRST CLAIM FOR RELIEF
## (Declaratory Judgment – No Coverage under the TBIC Policy)

26. TBIC incorporates by reference the preceding paragraphs as if fully set forth herein.

27. The "Assault & Battery" exclusions applicable to the CGL Coverage Part and the Liquor Liability Coverage Part in the TBIC Policy provides as follows:

**EXCLUSION – ASSAULT, BATTERY OR OTHER PHYSICAL ALTERCATION**[1]

*****

**D.** This insurance does not apply to:

**Assault, Battery Or Other Physical Altercation**

This insurance does not apply to any "injury or damage":

**(1)** Expected or intended from the standpoint of any insured;

**(2)** Caused by or arising, directly or indirectly, in whole or in part out of any "assault" or "battery" committed or attempted by any person;

**(3)** Caused by or arising, directly or indirectly, in whole or in part out of any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault" or "battery"; or

**(4)** Caused by or arising, directly or indirectly, in whole or in part out of any actual, alleged, or threatened verbal or physical confrontation or altercation committed, or any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened verbal or physical confrontation or altercation.

* * *

**G.** The exclusions added in paragraphs **D.**, **E.** and **F.** of this endorsement apply to all acts, errors, or omissions, even if the claims against any insured allege negligence or other wrongdoing, including, but not limited to:

**(1)** All theories of liability (direct or vicarious) asserted against any insured, including, but not limited to, all theories of negligence, gross negligence, recklessness, or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy;

**(2)** The supervision, hiring, employment, training, or monitoring of others by that insured; or

**(3)** The rendering of or failure to render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation.

**H.** For the purposes of this endorsement, the following is added to the **Definitions** section of this policy:

"Injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes damage arising out of any act, error, or omission, loss, covered pollution cost or expense, "bodily injury",

[1] The "Assault & Battery" exclusion quoted herein is found in the CGL Coverage Part to the TBIC Policy and is identical in all relevant respects to the "Assault & Battery" exclusion in the Liquor Liability Coverage Part in the TBIC Policy.

> "property damage", "personal and advertising injury", or "damages" as defined in the applicable Coverage Part.
>
> "Assault" means any attempt or threat to inflict injury upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm.
>
> "Battery" means physical contact with a person without his or her consent that entails some injury or offensive touching.

28. A genuine, actual, and justiciable controversy has now arisen and presently exists between and among the parties to this action concerning the applicable coverage afforded by TBIC under the TBIC Policy for the claims or damages resulting from the allegations contained in the Underlying Lawsuit, and whether the TBIC Policy provides coverage for the claims in the Underlying Lawsuit.

29. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine the rights and obligations of the parties and will settle the controversy among them as to whether TBIC had or has an obligation under the TBIC Policy to defend and/or indemnify Infinicee, Middleton, and/or Alameda in the Underlying Lawsuit.

30. The TBIC Policy does not provide coverage for the claims asserted in the Underlying Lawsuit because:

a. The "Assault & Battery" exclusions in the TBIC Policy exclude coverage under the policy for the claims in the Underlying Lawsuit because the injury or damage claimed was (1) caused by or arose, directly or indirectly, in whole or in part out of any "assault" or "battery" committed or attempted by any person, (2) caused by or arose, directly or indirectly, in whole or in part out of any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened "assault" or "battery," or (3) caused by or arising, directly or indirectly, in whole or in part out of any actual, alleged, or threatened verbal or

physical confrontation or altercation committed or any act, error, or omission in connection with avoiding, preventing, suppressing, or halting any actual or threatened verbal or physical confrontation or altercation;

b. The claims asserted in the Underlying Lawsuit do not fall within the coverage afforded under the "Insuring Agreement" for Coverage A – Bodily Injury and Property Damage Liability in the CGL Coverage Part in the TBIC Policy because the claims were not caused by an "occurrence" as that term is defined in the TBIC Policy; and

c. The "Liquor Liability" exclusion bars coverage under Coverage A – Bodily Injury and Property Damage Liability in the CGL Coverage Part in the TBIC Policy because the "bodily injury" claimed in the Underlying Lawsuit is "bodily injury" for which any insured may be held liable by reason of: (1) causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises; (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

d. The "Exclusion – Punitive Damages" endorsement to the TBIC Policy excludes coverage under the TBIC Policy for any claim for punitive or exemplary damages or any fees, including but not limited to attorney fees, costs, interest, or damages attributable to punitive or exemplary damages that may be awarded in the Underlying Lawsuit.

31. The TBIC Policy does not provide coverage for any of the claims asserted in the Underlying Lawsuit because the TBIC Policy contains other terms, conditions, and exclusions which otherwise preclude coverage for such claims.

32. TBIC requests this Court to declare the rights, obligations, and liabilities of the parties under the TBIC Policy with respect to the claims asserted in the Underlying Lawsuit. Specifically, TBIC is entitled to a judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring and adjudging that it did not and does not have an obligation to defend Infinicee, Middleton, and/or Alameda under the TBIC Policy in relation to the claims in the Underlying Lawsuit and that TBIC does not have a duty to indemnify Infinicee, Middleton, or Alameda for the claims in the Underlying Lawsuit, including the Order of Judgment entered against Infinicee in the Underlying Lawsuit.

**WHEREFORE,** Plaintiff The Burlington Insurance Company respectfully prays the Court as follows:

1. That the Court declare and decree that the TBIC Policy does not afford coverage for any of the claims in the Underlying Lawsuit;

2. That the Court declare and decree that TBIC did not and does not have an obligation to defend Infinicee, Middleton, and/or Alameda under the TBIC Policy in relation to the Underlying Lawsuit;

3. That the Court declare and decree that TBIC is not required to indemnify Infinicee, Middleton, and/or Alameda under the TBIC Policy for the claims in the Underlying Lawsuit, including the Order of Judgment entered against Infinicee in the Underlying Lawsuit;

4. That the costs of this action be taxed against the Defendants;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as the Court may deem just and proper.

This the 8th day of September, 2026.

/s/ David G. Harris II
David G. Harris II (S.C. Federal Bar No.: 12039)
GOLDBERG SEGALLA LLP
701 Green Valley Road, Suite 310
Greensboro, North Carolina 27408
Telephone: 336.419.4900
Facsimile: 336.419.4950
Email: dbrown@goldbergsegalla.com
dharris@goldbergsegalla.com

*Attorneys for The Burlington Insurance Company*